IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARY D. MITCHELL,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTINE E. WORMUTH,<br>SECRETARY, DEPARTMENT OF THE<br>ARMY, in her official capacity,<br><br>    Defendant. | Case No. 3:20-cv-0009 RRB<br><br>**ORDER REGARDING**<br>**MOTION TO DISMISS**<br>**(Docket 16)** |

Plaintiff, Mary D. Mitchell, has filed a Complaint pursuant to Title VII of the Civil Rights Act against the Secretary, Department of the Army, alleging Hostile Work Environment (Count 1), Retaliation (Count 2), Deferred Retirement Retaliation (Count 3), and Disparate Impact (Count 4), all in violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e *et seq.*[1] She seeks a declaration by this Court of a hostile work environment; a permanent injunction prohibiting Defendant from engaging in discriminatory and retaliatory employment practices; remedial measures; reinstatement of lost TSP benefits; damages of $25,000,000; compensatory damages; punitive damages; and attorney fees and costs.[2] She also demands a jury trial.

---

[1] Docket 1.
[2] *Id.*

Defendant moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Mitchell's complaint for failure to exhaust administrative remedies and failure to state a claim for which relief can be granted.[3] Plaintiff has opposed the motion to dismiss as to exhaustion, and Defendant has replied.[4]

## I. BACKGROUND

Plaintiff is a former GS-13 civilian Army Community Service Division Chief at Fort Wainwright, Alaska (also known as USAG-Alaska). She was so employed September 6, 2006, until December 31, 2011;[5] June 6, 2014, to February 5, 2018; and September 26, 2018, to April 15, 2019, when she took early deferred retirement.[6]

Plaintiff alleges that her April 2019 retirement was "forced" due to "multiple incidents of discrimination, differential treatment, not being given equal employment opportunities, and retaliation by key leadership of USAG-Alaska because of her race, color, and national origin created a hostile work environment."[7]

Shortly after her early retirement, Plaintiff filed an EEO formal administrative complaint of discrimination on May 22, 2019, referred to in the Complaint as the "May 22 charges."[8] On June 3, 2019, the Army dismissed the May 22 Charges,

---

[3] Docket 16.
[4] Dockets 17, 18.
[5] From January 1, 2012, until June 6, 2014, Plaintiff transferred to Germany, where she describes the working conditions as "non-discriminatory." Docket 1 at 6.
[6] Docket 1 at 1–2.
[7] Docket 1 at 2. Plaintiff identifies herself as "a 50-year-old adult female, United States citizen," whose "race and ethnicity are African American," but notes that "cultural factors and mannerisms in her upbringing can give Caucasian Americans the impression that her national origin is foreign." Docket 1 at 3–4.
[8] Docket 1 at 3.

concluding that much of the complaint was untimely, and finding that Plaintiff's allegations failed to state a claim under 29 C.F.R. §§ 1614.103 and 1614.106(a).[9] But on October 25, 2019, the Equal Employment Opportunity Commission reversed the Army's final decision, and ordered the Army to process Plaintiff's harassment/hostile work environment claims in accordance with 29 C.F.R. § 1614.108 *et seq.*[10] The EEOC also advised Plaintiff that she had the alternative right to file a civil action in an appropriate United States District Court within ninety (90) calendar days, which resulted in the above-captioned case.[11]

## II. DISCUSSION

Defendant alleges that Plaintiff abandoned her earlier discrimination claims; failed to exhaust administrative remedies; fails to state a claim upon which relief can be granted; and is not entitled to punitive damages.[12] Plaintiff opposes dismissal, arguing that she has exhausted her administrative remedies, and clarifying that her "pleading of additional historical causes of action prior to her new employment position serve to establish a pervasive hostile work environment that gives substance to her new claims of discrimination."[13] Plaintiff's *pro se* Opposition to the Motion to Dismiss did not address the Rule 12(b)(6) argument regarding failure to state a claim.

### A. Punitive Damages

Section 102 of the Civil Rights Act of 1991 specifically prohibits federal employees from receiving punitive damages in intentional discrimination cases. 42 U.S.C.

---

[9] Docket 16-4.
[10] Docket 16-5.
[11] Docket 1 at 3.
[12] Docket 16.
[13] Docket 17 at 1.

*Mitchell v. Wormuth*  Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss  Page 3
Case 3:20-cv-00009-RRB   Document 20   Filed 10/22/21   Page 3 of 14

§ 1981a(b)(1). The law is clear that a governmental entity cannot be liable for punitive damages under Title VII.

B.    **Failure to Exhaust Administrative Remedies (Counts 2, 3 and 4)**

When a motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the plaintiff has the burden of proving that the court has subject matter jurisdiction over the action.[14] Failure to exhaust administrative remedies precludes jurisdiction by this Court under Title VII.

Title VII specifically requires a federal employee to exhaust all available administrative remedies before filing an employment discrimination complaint in the district court.[15] Failure to properly and timely exhaust administrative remedies subjects a judicial complaint to dismissal.[16] Defendant submits that Plaintiff's retaliation claims, as well as her disparate impact claim, were not properly administratively exhausted.[17]

EEOC regulations governing the acceptance and processing of discrimination complaints in federal employment cases require a federal employee to initiate contact with an agency EEO counselor within 45 days from the alleged discriminatory act.[18] The Army's June 3, 2019, Notice of Dismissal found that the majority of Plaintiff's complaint was untimely, because she "did not contact the EEO counselor

---

[14] *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).
[15] *Vinieratos v. U.S. Dep't of Air Force Through Aldridge*, 939 F.2d 762, 767–68 (9th Cir. 1991); *Brown v. General Services Administration*, 425 U.S. 820, 832 (1976).
[16] *See, e.g.*, *Brown*, 425 U.S. at 832.
[17] Docket 16.
[18] 29 CFR § 1614.105(a)(1). *See generally* 29 C.F.R. §§ 1614.104–1614.110 (detailing administrative processing of federal Title VII complaints).

*Mitchell v. Wormuth*                                                               Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss                                                                      Page 4
Case 3:20-cv-00009-RRB   Document 20   Filed 10/22/21   Page 4 of 14

within forty-five (45) days of the discriminatory event . . ."[19] On appeal, however, the EEOC found that hostile work environment claims "collectively constitute one unlawful employment practice," and that the entire hostile work environment claim was actionable provided at least one incident occurred within the 45 day filing period.[20] The EEOC found that the "various incidents comprising Complainant's hostile work environment claim occurred within the 45-day time period," that "a fair reading of the record reflects that the matters which the Agency identified in claims 1.a-l are part of that harassment claim," and therefore the Agency improperly dismissed these claims as untimely.[21] Accordingly, Plaintiff has preserved her claim for ***hostile work environment*** (Count 1), and this Court has subject matter jurisdiction over the issue.

But Defendant is correct that Plaintiff failed to plead ***retaliation*** (Count 2), ***deferred retirement retaliation*** (Count 3),[22] or ***disparate impact*** (Count 4), in her EEOC complaint or appeal.[23] Rather, Plaintiff's sole claim at the administrative level was related to hostile work environment/harassment on the basis of race, color, and national origin. Plaintiff's letter to the EEOC stated: "All of the events in my complaint contain discrimination based on my race, color, and national origin."[24] Both the Army EEO Office and the EEOC interpreted her complaint to allege race, color, and national origin

---

[19] Docket 16-4 at 3.
[20] Docket 16-5 at 4.
[21] *Id.*
[22] Defendant aptly characterizes Count 3, which Plaintiff styles as "Deferred Retirement Retaliation" as a claim for Constructive Discharge. Docket 16 at 24–28.
[23] *See* Dockets 16-3, 16-5 at 2.
[24] Docket 16-3 at 1.

discrimination, but not retaliation, constructive discharge, or disparate impact.[25] In light of the foregoing, ***Counts 2, 3, and 4 are dismissed for failure to exhaust administrative remedies.***

### C. Hostile Work Environment (Count I)

#### (1) Federal Rule of Civil Procedure 12(b)(6)

Plaintiff clearly exhausted her administrative remedies as to Count I, Hostile Work Environment. The only issue remaining, therefore, is whether Count I should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint.[26] When considering a 12(b)(6) motion to dismiss, courts generally must accept the plaintiff's allegations as true and construe them in the light most favorable to plaintiff.[27] However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[28] Moreover, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[29]

The United States Supreme Court has specifically addressed the pleading requirements in a civil action:

---

[25] Even if Plaintiff had exhausted her disparate impact claim, the premise of disparate impact discrimination is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987, 108 S. Ct. 2777, 2785, 101 L. Ed. 2d 827 (1988). Plaintiff does not allege that any facially neutral workplace rule or test disproportionately impacts members of a particular protected group.
[26] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[27] *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 439 (9th Cir. 2020).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[29] *Iqbal*, 556 U.S. at 678.

*Mitchell v. Wormuth* Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss Page 6
Case 3:20-cv-00009-RRB Document 20 Filed 10/22/21 Page 6 of 14

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief.". . . [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[30]

The Court has reviewed Plaintiff's Complaint and Defendant's Motion to Dismiss in keeping with the above principles.

### (2) *Prima facie* case

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," or "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee," due to "race, color, religion, sex, or national origin."[31]

To establish a *prima facie* case of hostile work environment, a plaintiff must raise a "triable issue of fact" as to whether:

---

[30] *Id*. (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[31] 42 U.S.C.A. § 2000e-2.

*Mitchell v. Wormuth*  Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss  Page 7
Case 3:20-cv-00009-RRB   Document 20   Filed 10/22/21   Page 7 of 14

(1) the defendants subjected her to verbal or physical conduct based on her race;

(2) the conduct was unwelcome; and

(3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment."[32]

The Supreme Court has instructed as follows:

> We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." . . . [But] "simple teasing," . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."[33]

The Supreme Court was clear that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"[34]

Defendant asserts that Plaintiff fails to state a claim for hostile work environment based upon race, national origin, or color, arguing that, while Plaintiff alleges a "laundry list of trivial workplace slights," only two of those incidents were arguably connected to her race.[35] Therefore, argues Defendant, "plaintiff has not alleged severe and

---

[32] *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted) (emphasis added).
[33] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal citations omitted).
[34] *Id.*
[35] Docket 16 at 20–24. "Specifically, plaintiff alleges that some unidentified person at work told plaintiff that another unidentified person at work commented (in the midst) of describing plaintiff in a negative light that she was black. The only other 'incident' occurred when someone at work told plaintiff that 'DPTM's Jackson' uttered the words 'that's what blacks do, complain and get benefits from the

pervasive conduct or conduct that is plausibly connected to her protected categories," and does not meet the standard needed to show a plausible hostile work environment.[36] Defendant suggests that Plaintiff's allegations arguably connected with her race are "far less severe and pervasive" that in either *Vasquez v. County of Los Angeles*,[37] or *Kortan v. California Youth Authority*.[38] But *Vasquez* and *Kortan* both involved isolated incidents. Here, the Complaint includes almost 15 pages of incidents between 2010 and her early retirement in 2019.[39]

According to Plaintiff, she "began to experience differential treatment by USAG leadership" in 2010 when she tried to terminate Shannon Thornton, a Caucasian male, whom she found had "violated the prevention of sexual harassment protocols, made racist remarks, and physically assaulted a UPS delivery driver."[40] Plaintiff's termination procedure was overturned, Thornton was transferred to a different supervisor, and Plaintiff alleges that Thornton thereafter "was allowed to speak in very derogatory terms about her on a regular basis."[41] Shortly thereafter, Plaintiff received an unexpected "negative performance rating" on September 8, 2011, which Plaintiff believes was a racially-motivated act of retaliation for trying to terminate Thornton.

---

system.' Plaintiff was not even present for either of these vague allegations; rather she claims to have heard them second-hand from some unidentified individual. Indeed, it is not even clear that the second statement is in reference to her." *Id*. at 23.
  [36] Docket 16 at 23.
  [37] 349 F.3d 634, 642–43 (9th Cir. 2003) (finding no hostile work environment where supervisor made derogatory statements regarding Hispanics six months apart).
  [38] 217 F.3d 1104 (9th Cir. 2000) (finding no hostile work environment where supervisor made a "flurry" of offensive comments regarding women in a single instance, concluding that the offensive behavior was not "severe or pervasive," and that the plaintiff failed to show an adverse employment action).
  [39] Docket 1 at ¶¶ 23–74.
  [40] Docket 1 at ¶¶ 25, 56.
  [41] Docket 1 at ¶ 26.

Several years later, in 2018, Thornton was employed as a Supply Specialist, and falsely accused Plaintiff of theft.[42]

      She alleges that she was prevented from networking activities and advancement opportunities presented to all of her Caucasian coworkers,[43] failed to receive public recognition for accomplishments like her Caucasian coworkers,[44] was left out of email loops sent to her colleagues,[45] was not allowed to attend meetings relevant to projects she was working on,[46] and was ignored during the meetings she was permitted to attend.[47] She alleges that her Caucasian staff members routed everything through the Caucasian coworker with whom she shared supervisory responsibilities.[48] She was told by her supervisor that the Deputy to the Garrison Commander did not like her, and therefore alleges that the Deputy's "dislike of a person of color allowed for others under her command to embrace a climate of hatred towards people of color."[49]

      Plaintiff alleges that she was: Excluded from socializing with other employees because "she was not one of them – meaning a Caucasian";[50] Denied leave under FMLA when her children were victims in a criminal matter;[51] and "Bullied" by Victim Advocate Laurie Weyanna, whom she alleges also favored Caucasian victims over non-Caucasian victims in her work, but that complaints regarding Weyanna only brought Plaintiff more criticism.[52]

---

[42] Docket 1 at ¶ 56.
[43] Docket 1 at ¶¶ 28, 32.
[44] Docket 1 at ¶ 36.
[45] Docket 1 at ¶ 65.
[46] Docket 1 at ¶¶ 57, 59, 60, 68.
[47] Docket 1 at ¶ 63.
[48] Docket 1 at ¶29.
[49] Docket 1 at ¶¶ 30–31.
[50] Docket 1 at ¶ 31.
[51] Docket 1 at ¶ 72.
[52] Docket 1 at ¶ 34.

Plaintiff alleges that an outside Auditor, Michelle Thomas, who evaluated her workplace, and who also was a person of color, noted that there were no people of color in leadership positions, opined that "leadership was out to fail Ms. Mitchell," and told Plaintiff's superiors that Plaintiff "needed to have access to information to do her job effectively." She alleges that the superiors "responded negatively to Michelle Thomas . . . furthering the message that people of color will be treated different than Caucasians."[53]

Plaintiff alleges that her reputation was tainted by comments alleging that she "was black, violent, stole, had punched a client . . ., and sexually harassed someone,"[54] and that she was the subject of a memorandum entitled "Mary Mitchell Undue Disruption Determination," which contained "unsupported statements that misrepresented facts with the intent to injure Ms. Mitchell's prospects of future employment opportunities," all of which Plaintiff believes were racially motivated.[55]

She alleges she was terminated (later reinstated by the MSPB) after being targeted for her race over a "piece of information from a 2004 credit report," which had been "previously cleared by security personnel in 2006," while noting that when Caucasian employees were found unsuitable for their positions, they were reassigned rather than terminated.[56] Upon her return to work, she was approached by coworkers who accused her of using a "loophole" to get her job back after she "punched someone in the face," and that a coworker said "that's what blacks do, complain and get benefits from the system."[57] Two days after returning to work, she was accused of theft due to missing equipment, a false charge brought on by the male employee, Shannon Thornton,

---

[53] Docket 1 at ¶¶ 42, 43.
[54] Docket 1 at ¶ 45.
[55] Docket 1 at ¶ 49.
[56] Docket 1 at ¶¶ 37–40.
[57] Docket 1 at ¶ 55.

whom she had tried to fire in 2010. She further alleges that supervisors employed a Caucasian friend in a position for which they were not qualified, even lowering the standards on job descriptions so the individual would qualify.[58]

In December 2018, a Caucasian woman was selected to replace her in her current position, she was moved to a lower grade position (although kept her GS13 status), and was moved to an office "hidden from view."[59] Her new supervisor reduced Plaintiff's work to "menial tasks."[60] Three months later, she walked in on a conversation between two employees who "were talking about an employee of color that was made to work at a location away from everyone and that it just wasn't right adding that the employee of color was not given the opportunity to work on projects like the other Caucasian employees in the same position description."[61]

Plaintiff alleges that an employee of color was terminated after complaining about assaults, waste, fraud, and abuse, and that leadership was "upset because someone from above had advised them to stop the harassment" after "continued complaints of discrimination against persons of color."[62] In support, she cites an October 24, 2018, Climate Survey Report on USAG-AK that allegedly concluded that "65% of minority respondents reported discrimination and sexual harassment retaliation while at USAG-AK."[63]

Only a complaint that states a plausible claim for relief survives a 12(b)(6) motion to dismiss, and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

---

[58] Docket 1 at ¶¶ 51–53.
[59] Docket 1 at ¶ 58.
[60] Docket 1 at ¶ 58.
[61] Docket 1 at ¶ 66.
[62] Docket 1 at ¶¶ 69, 70.
[63] Docket 1 at ¶ 22.

judicial experience and common sense. . . ."[64] While Defendant describes the foregoing as a "laundry list of trivial workplace slights," the cumulative nature of "hostile conduct [which] pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position," is adequate to show a hostile work environment, and "Courts have long recognized that a workplace in which racial hostility is pervasive constitutes a form of discrimination."[65] Plaintiff need only present a "triable issue of fact" at this juncture—she need not prove her claims to survive a motion to dismiss. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[66] It remains to be seen whether Plaintiff can prove that she was subjected to verbal or physical conduct based on her race,[67] but the Complaint here meets the *prima facie* test for a hostile work environment on its face.

### III. CONCLUSION

Accordingly, the Motion to Dismiss at Docket 16 is **GRANTED IN PART and DENIED IN PART**. Because the Court finds that the Complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face,"[68] the Motion to Dismiss as to Count 1, Hostile Work Environment, is **DENIED**.

---

[64] *Iqbal*, 129 S. Ct. 1937, 1949–50(2009) (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[65] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112–13 (9th Cir. 2004) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)).
[66] *Iqbal*, 129 S. Ct. at 1950.
[67] *Surrell v. California Water Serv. Co*., 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted) (emphasis added).
[68] *Iqbal*, 556 U.S. at 678.

*Mitchell v. Wormuth*  Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss  Page 13
Case 3:20-cv-00009-RRB   Document 20   Filed 10/22/21   Page 13 of 14

The Motion to Dismiss is **GRANTED** with respect to Counts 2, 3, and 4, for failure to exhaust administrative remedies.

Plaintiff is not entitled to Punitive Damages.

Defendant shall file an Answer to the Complaint on or before November 18, 2021.

IT IS SO ORDERED this 22nd day of October, 2021, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*Mitchell v. Wormuth* Case No. 3:20-cv-0009 RRB
Order Regarding Motion to Dismiss Page 14
Case 3:20-cv-00009-RRB   Document 20   Filed 10/22/21   Page 14 of 14